## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| DALLAS M. FAULKNER, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: |
| v. | ) ) ) | |
| VICTORIA M. HOLT, RALPH B. ANDY, LLOYD E. CAMPBELL, EDWARD J. DINEEN, WALTER J. KLEIN, PAMELA F. LENEHAN, JACKSON W. ROBINSON, CRAIG A. WOLFANGER, POLYONE CORPORATION, 2012 REDHAWK, INC., 2012 REDHAWK, LLC, and SPARTECH CORPORATION, | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## CLASS ACTION COMPLAINT
## FOR BREACH OF FIDUCIARY DUTY

Plaintiff Dallas M. Faulkner ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

### NATURE OF THE ACTION

1.    Plaintiff brings this class action on behalf of the public stockholders of Spartech Corporation ("Spartech" or the "Company") against Spartech's Board of Directors (the "Board" or the "Individual Defendants") for their breaches of fiduciary duties arising out of their attempt to sell the Company to PolyOne Corporation ("PolyOne") by means of an unfair process and for an unfair price and against PolyOne and its affiliates for aiding and abetting the Board's breaches of fiduciary duty. Plaintiff

also brings this action individually against Spartech's Board for their violations of Section 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14a-9 promulgated thereunder ("Rule 14a-9").

2.      Spartech is a leading producer of plastic sheet, compounds and packaging solutions including products such as polymeric compounds, concentrates, and custom extruded sheet and rollstock products.

3.      On October 24, 2012, PolyOne and the Company announced a definitive agreement under which PolyOne, through its wholly owned subsidiaries 2012 RedHawk, Inc. ("Merger Sub") and 2012 RedHawk, LLC ("Merger LLC"), will acquire all of the outstanding shares of Spartech in a stock and cash transaction through which Spartech shareholders will receive $2.67 in cash and 0.3167 shares of PolyOne common stock for each share of Spartech common stock (the "Proposed Transaction"). The Proposed Transaction is valued at approximately $393 million, or $8.00 per share.

4.      The Proposed Transaction was approved by a majority interested Board which favored a transaction with PolyOne in order to secure millions of dollars of lucrative golden parachute payments from new change of control agreements for the Company's executive officers and other windfall financial benefits for the Board.

5.      From the outset, the Board focused on pursuing the interests of insiders – including their own - ahead of the interests of the Company's public stockholders. Most egregiously, in concurrence with the execution of the agreement and plan of merger with PolyOne ("Merger Agreement"), Spartech entered into Amended and Restated Severance and Non-Competition Agreements with its executive officers, including defendant

Victoria M. Holt ("Holt"), the Company's President and Chief Executive Officer, allowing for generous severance payments in the event their employment is terminated as a result of a change of control stemming from the Proposed Transaction.

6.     In order to secure the above windfall benefits, the Board inexplicably abandoned its long-term strategic plan to pursue a transaction with PolyOne and did not contact even one other potentially interested bidder to create a competitive bidding process and obtain a fair price for Spartech's public shareholders. Instead, the Board focused exclusively on a transaction with PolyOne and declined to run any sales process or allow for a go-shop after the parties entered into the Merger Agreement. Instead, the Board rushed into a deal with PolyOne and agreed to a strict no-solicitation provision that prevents the Company from soliciting other potential acquirers or even in continuing discussions and negotiations with potential acquirers. This is particularly troubling in light of the Board's failure to contact even one other potential interested party to shop the Company to potentially interested bidders.

7.     As a result of the Board's failure to engage in any semblance of a sales process, it failed to get a fair price for the Company. Indeed, on October 24, 2012, the day the Proposed Transaction was announced, Spartech shares leapt to a 20-month high of $8.48 per share, $0.48 *higher* than the $8.00 offer price, demonstrating the market believes the value of Spartech stock is higher than the proposed offer price. Additionally, the Company's shares have continued to rise. As of January 18, 2013, the Company's stock closed at $9.69 per share—$1.69 higher than the $8.00 offer price.

8.     The materially flawed sales process has not been lost on analysts. Notably, one analyst from Piper Jaffray in expressing the view that PolyOne was getting Spartech at a "relatively inexpensive price," remarked that "[The deal] was not more than 7.5 times trailing earnings before interest, taxes, depreciation and amortization (EBITDA), which is pretty low for a specialty chemicals company."

9.     Given Spartech's recent strong performance as well as its future growth prospects, the consideration shareholders will receive is unfair, inadequate and undervalues the Company.

10.    On December 17, 2012, PolyOne filed a Form S-4 Registration Statement (the "S-4") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. The S-4 fails to provide the Company's shareholders with material information and/or provides them with materially misleading information thereby rendering the shareholders unable to make an informed decision on how to vote on the Proposed Transaction at the special stockholder meeting. Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder, by omitting material facts necessary to render the S-4 non-misleading.

11.    The Individual Defendants have breached their fiduciary duties of loyalty and due care and violated the federal securities laws, and PolyOne, Merger Sub, and Merger LLC have aided and abetted the Board's misconduct. Plaintiff seeks to enjoin the Proposed Transaction unless and/or until defendants cure their breaches of fiduciary duty.

## **JURISDICTION AND VENUE**

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), as this Complaint alleges violations of Section 14(a) of the Exchange Act and Rule 14a-9.  This court has jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000 exclusive of interests and costs.

14.     This action is not a collusive one to confer jurisdiction on a court of the United States, which it would otherwise not have.

15.     Venue is proper in this district because Defendant Spartech maintains its principal executive offices in the district and the defendants have conducted business and engaged in numerous activities, including the alleged misconduct, which have had an effect on this district.

## PARTIES

16.     Plaintiff is, and has been at all relevant times, the owner of shares of Spartech common stock.  Plaintiff is a citizen of California.

17.     Spartech is a corporation organized and existing under the laws of the State of Delaware.  Spartech maintains its principal executive offices at 120 S Central Avenue Ste 1700 Clayton, Missouri 63105.

18.     Defendant Victoria M. Holt (Holt) has been the President and Chief Executive Officer of the Company since September 2010, and a director of the Company since 2005.  Holt signed the materially misleading S-4 and, upon information and belief,

participated in the preparation of the S-4. Upon information and belief, Holt is a citizen of Missouri.

19.     Defendant Ralph B. Andy ("Andy") has been the non-executive Chairman of the Board since January 2008, and has been a director of the Company since 1998. Upon information and belief, Andy reviewed and/or participated in the preparation of the S-4. Upon information and belief, Andy is a citizen of Pennsylvania.

20.     Defendant Lloyd E. Campbell ("Campbell") has been a director of the Company since 2002.   Upon information and belief, Campbell reviewed and/or participated in the preparation of the S-4. Upon information and belief, Campbell is a citizen of New York.

21.     Defendant Edward J. Dineen ("Dineen") has been a director of the Company since 2006. Upon information and belief, Dineen reviewed and/or participated in the preparation of the S-4. Upon information and belief, Dineen is a citizen of Texas.

22.     Defendant Walter J. Klein ("Klein") has been a director of the Company since 2003.   Upon information and belief, Klein reviewed and/or participated in the preparation of the S-4. Upon information and belief, Klein is a citizen of Illinois.

23.     Defendant Pamela F. Lenehan ("Lenehan") has been a director of the Company since 2004.   Upon information and belief, Lenehan reviewed and/or participated in the preparation of the S-4. Upon information and belief, Lenehan is a citizen of Massachusetts.

24.     Defendant Jackson W. Robinson ("Robinson") has been a director of the Company since 1993.   Upon information and belief, Robinson reviewed and/or

participated in the preparation of the S-4.  Upon information and belief, Robinson is a citizen of Massachusetts.

25.     Defendant Craig A. Wolfanger ("Wolfanger") has been a director of the Company since 2001.  Upon information and belief, Wolfanger reviewed and/or participated in the preparation of the S-4.  Upon information and belief, Wolfanger is a citizen of Pennsylvania.

26.     Defendants referenced in ¶¶ 18 through 25 are collectively referred to as Individual Defendants and/or the Board.

27.     Defendant PolyOne is an Ohio corporation with its headquarters located at 33587 Walker Road Avon Lake Ohio 44012. PolyOne is a leading provider of specialized polymer materials, services and solutions.

28.     Defendant Merger Sub is a Delaware corporation wholly owned by PolyOne that was created for the purposes of effectuating the Proposed Transaction.

29.     Defendant Merger LLC is a Delaware limited liability corporation wholly owned by PolyOne that was created for the purposes of effectuating the Proposed Transaction.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff brings his state law claims for breach of fiduciary duty and aiding and abetting breach of fiduciary duty as class action claims pursuant to FEDERAL RULE OF CIVIL PROCEDURE 23(a) on behalf of owners of Spartech common stock as of October 24, 2012, the announcement of the Proposed Transaction (the "Class").  Excluded from the Class are Defendants and their affiliates, immediate families, legal representatives, heirs,

successors or assigns and any entity in which Defendants have or had a controlling interest.

31.    The Class is so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through discovery, Plaintiff believes that there are thousands of members in the Class. According to the Merger Agreement, as of October 19, 2012, 30,796,296 shares of common stock were represented by the Company as outstanding. All members of the Class may be identified from records maintained by Spartech or its transfer agent and may be notified of the pendency of this action by mail, using forms of notice similar to that customarily used in securities class actions.

32.    Questions of law and fact are common to the Class, including, *inter alia*, the following:

> (i)    Whether the Individual Defendants breached their fiduciary duties of undivided loyalty and due care with respect to Plaintiff and the other members of the Class in connection with the Proposed Transaction;

> (ii)    Whether the Individual Defendants breached their fiduciary duty to secure and a fair price for the benefit of Plaintiff and the other members of the Class in connection with the Proposed Transaction;

> (iii)    Whether the Individual Defendants misrepresented and omitted material facts in violation of their fiduciary duties

owed by them to Plaintiff and the other members of the Class;

(iv)    Whether Spartech, Merger Sub, and Merger LLC aided and abetted the Individual Defendants' breaches of fiduciary duty; and

(v)    Whether Plaintiff and the other members of the Class would be irreparably harmed were the transactions complained of herein consummated.

33.    Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages as a result of Defendants' wrongful conduct as alleged herein.

34.    Plaintiff is committed to prosecuting this action, will fairly and adequately protect the interests of the Class, and has no interests contrary to or in conflict with those of the Class that Plaintiff seeks to represent.

35.    The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

36.    Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

37.    Defendants have acted on grounds generally applicable to the class, making appropriate final injunctive relief with respect to the Class as a whole.

## FURTHER SUBSTANTIVE ALLEGATIONS

### *Company Background and its Poise for Growth*

38.    Spartech is a leading producer of plastic sheet, compounds and packaging solutions including products such as polymeric compounds, concentrates, and custom extruded sheet and rollstock products. The Company's three business segments which operate out of the United States, Mexico and France, annually process approximately one billion pounds of plastic resins, specialty plastic alloys and color and specialty compounds.

39.    While Spartech experienced some difficulties in 2011, the Company's recent financial performance has been extremely strong. The Company's recovery began quickly in 2012, as evidenced by Spartech's first quarter financial results announced on May 14, 2012, which featured an increase in net sales and a decrease in operating losses. Highlights from the press release announcing these results include:

- Net sales of $281.8 million for the first quarter of 2012 increased compared to $234.8 million in 2011, representing 9% from price/mix changes, 8% impact from an extra week in the current fiscal year quarter, and a 3% increase in underlying volume.
- Operating losses excluding special items decreased to $0.5 million for the first quarter of 2012 from $1.0 million in the prior year first quarter representing a shift to higher margin products and increased volume.
- Excluding special items, diluted loss per share from continuing operations was $(0.07) compared to $(0.04) in the first quarter of the prior year.
- The operations used $6.7 million of cash in the first quarter of 2012 to fund an increase in net working capital.

40.    Spartech continued to thrive in the second fiscal quarter of 2012, achieving strong financial results which exceeded the comparable period in 2011. Highlights from these results as released on June 13, 2012 include:

- Net sales increased by 6% to $298.3 million over the prior year quarter.
- Operating earnings excluding special items increased to $8.5 million from $7.6 million in the prior year period, reflecting improved operating margins and increased volume.
- Diluted earnings per share from continuing operations, excluding special items, were $0.12 per share, an increase of $0.02 per share over the prior year period.
- Generated $15.5 million of cash flow from operations.
- Segment results reflect higher margin product mix shift and continued efforts to increase operating efficiencies.

41.    Defendant Holt credited these results to the "continued execution of [the Company's] strategic plan," and added that Spartech's focus during the second half of 2012 was the further implementation of these strategic initiatives including:

[I]mplementing operational improvements to enhance margins, accelerating growth in our specialty products and continuing to reduce our cost structure. Two actions that we are undertaking in support of these priorities are the consolidation of two Custom Sheet and Rollstock operating facilities in Canada into one by the end of the year and the expansion of our operations in Muncie, Indiana to support our growth initiatives in higher margin packaging product lines and new customer programs.

Holt further stated her expectation that "these actions will drive additional improvement in our financial results and enhance shareholder value."

42.    This additional improvement occurred in the second half of 2012 as evidenced by the Company's increase in operating earnings from $6.3 million to $7.3 million year-over-year in its third fiscal quarter, and even sharper increase of 58% in reported operating earnings from a loss of $34.9 million to $2.5 million in its fourth fiscal

quarter of 2012. On December 13, 2012 the Company also announced its fiscal year 2012 overview, showing the significant improvements made to the Company's financial performance over the 2012 year. Highlights include:

- Net sales increased by 4% from the prior year to $1,149.4 million, reflecting a 1% increase in volume, a 1% increase in price/mix, and a 2% increase from the impact of an extra week in fiscal 2012 versus fiscal 2011 (53 weeks vs. 52 weeks).
- The reported operating earnings were $15.6 million in 2012 compared to a $21.3 million operating loss in 2011. Operating earnings excluding special items increased to $24.4 million in 2012 from $21.1 million in the prior year. Diluted earnings per share from continuing operations excluding special items were $0.28 in 2012 compared to $0.20 in the prior year.
- Net cash provided by operating activities was $44.3 million in 2012 that provided for the pay down of $22.5 million of debt while funding $20.0 million of capital expenditures to support future operating improvements and capacity for growth.
- We continue to make progress on the operational turnaround initiatives, and the previously announced plant consolidation efforts. We remain focused on completing the PolyOne Corporation transaction, which was granted early termination of the required waiting period under Hart-Scott-Rodino Antitrust Improvements Act on November 21, 2012.

43. Given the Company's recent strong performance, and its positioning for growth, the Proposed Transaction consideration is inadequate and significantly undervalues the Company.

*Despite Spartech's Solid and Continued Improvement in the Company's Financial Results, the Board Agreed to Sell Spartech for Inadequate Consideration*

44.    In a press release dated October 24, 2012, Spartech announced that the Company had entered into the Merger Agreement with PolyOne pursuant to which PolyOne, through Merger Sub and Merger LLC, will acquire all of the outstanding shares of Spartech in a stock and cash transaction through which Spartech shareholders will receive $2.67 in cash and 0.3167 shares of PolyOne common stock for each share of Spartech common stock. The Proposed Transaction is valued at approximately $393 million, or $8.00 per share. After closing of the merger, Spartech shareholders will own a mere 10% of PolyOne's common stock.

45.    The day the Proposed Transaction was announced, Spartech shares leapt to a 20-month high of $8.48 per share, $0.48 *higher* than the $8.00 offer price, demonstrating the market believes the value of Spartech stock is higher than the proposed offer price. Additionally, the Company's shares have continued to rise, As of January 18, 2013, the Company's stock was trading at $9.69 per share—$1.69 per share higher than the $8.00 per share offer price.

46.    Furthermore, upon the announcement of the Proposed Transaction, analysts opined that Spartech was being bought at a low price. In expressing the view that PolyOne was getting Spartech at a "relatively inexpensive price," one analyst from Piper Jaffray remarked that "[The deal] was not more than 7.5 times trailing earnings before interest, taxes, depreciation and amortization (EBITDA), which is pretty low for a specialty chemicals company."

47.    PolyOne is seeking to acquire the Company at the most opportune time, at a time when the Company is performing very well and is positioned for tremendous growth.

**The Board Breached its Fiduciary Duties by Failing to Conduct Any Sales Process or Allow for a Go-Shop to Obtain a Fair Price for Spartech's Public Shareholders**

48.    On June 21, 2011, defendants Andy and Holt met with Stephen D. Newlin, Chairman, President and Chief Executive Officer and other representatives of PolyOne to discuss a potential transaction, at the invitation of PolyOne's then financial advisor, KeyBanc Capital Markets Inc. ("KeyBanc"). The Board informed PolyOne that it was not interested in a transaction and continued to pursue its long-term strategic plan.

49.    Several months later, in March 2012, the parties met again to discuss a potential transaction between PolyOne and Spartech. Defendant Andy, again, professed the Company's commitment to pursuing its strategic plan. Later that month, at the urging of PolyOne's advisor, KeyBanc, however, the Board agreed to discuss a transaction with PolyOne. During various executive sessions in March and April 2012, the Board, purportedly considered other potential strategic acquirors and determined that none of them "offered the same unique long-term opportunities as those presented by a possible strategic transaction with PolyOne." In reaching this unsupported conclusion, the Board, in breach of its fiduciary duties, made no attempt to reasonably inform itself as to the Company's market value and opportunities available from other potential bidders by, among other ways, actually contacting these parties to confirm the Board's unwarranted and unsupported conclusions.

50.     Rather, at the urging of PolyOne's financial advisor, from March 2012 forward, the Board inexplicably abandoned its long-term strategic plan and focused solely on reaching a deal with PolyOne instead of obtaining a fair price for Spartech's shareholders.

51.     On April 26, 2012, Barclays' Capital, Inc, ("Barclays"), the Company's own financial advisor, presented the Board with an overview of potential acquirers or merger partners for Spartech. Yet the Board consciously ignored the advice of its own advisor and, again, chose to take no action regarding initiating a competitive sales process before entering into the Merger Agreement.

52.     Furthermore, the Board agreed to include in the Merger Agreement a strict "no shop" provision that prohibits the Board from taking any meaningful action to ensure that they are in compliance with their fiduciary duties, including solicitation of alternative acquisition proposals or business combinations. Specifically, § 4.2 of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting interest from other potential acquirers in order to procure a price in excess of the amount offered by PolyOne. Section 4.2(a) demands that the Company terminate any and all prior or on-going discussions with other potential acquirers.

53.     Therefore, rather than seek a transaction that reflected the Company's true intrinsic value, the Board opted to eschew the interests of shareholders and focus solely on entering into the unfair Proposed Transaction with PolyOne.

*Spartech's Officers and Directors are Obtaining Special Benefits for Themselves Not Being Shared Equally by the Company's Shareholders*

54.   Rather than negotiate a transaction that was in the best interests of Spartech's shareholders, the Company's executive officers and directors were acting to better their own personal interests through the Proposed Transaction.

55.   In concurrence with the execution of the Merger Agreement, Spartech entered into Amended and Restated Severance and Non-Competition Agreements with executive officers Holt, Randy C. Martin, Timothy Feast, Robert Lorah, and Carol O'Neill, allowing for generous severance payments in the event their employment is terminated as a result of a change of control stemming from the Proposed Transaction.

56.   In addition, upon closing of the merger, all stock options and stock-settled stock appreciation rights will become fully vested, assumed by PolyOne and converted into an option to purchase a number of PolyOne shares. All unvested restricted stock and restricted stock units held by the Company's officers and directors will automatically vest and entitle the holder to receive the merger consideration.

57.   The vesting of these equity awards, along with payments such as the above mentioned severance payments, together make up the executive officers "golden parachute compensation." The amount of compensation these executive officers stand to receive from this "golden parachute compensation" is detailed in the chart below:

**Golden Parachute Compensation**

| Name | Cash ($)(1) | Equity ($)(2) | Pension/ NQDC ($) | Perquisites/ Benefits ($)(3) | Total ($) |
|---|---|---|---|---|---|
| Victoria Holt | 3,206,962 | 1,718,523 | 90,000 | 52,329 | 5,067,814 |
| Randy Martin | 1,009,231 | 523,281 | 414,758 | 43,747 | 1,991,017 |
| Timothy Feast | 834,240 | 274,810 | 57,482 | 43,413 | 1,209,945 |
| Robert Lorah | 748,596 | 259,394 | 61,530 | 34,817 | 1,104,337 |
| Carol O'Neill | 834,240 | 247,750 | 90,000 | 43,747 | 1,215,737 |

58.    The windfall financial benefits the directors will receive is demonstrated in the chart below:

| | Aggregate Number of Outstanding Restricted Stock Units(1) | Aggregate Number of Restricted Stock Units Settled at Effective Time of Merger(2) | Aggregate Value of Restricted Stock Units Settled at Effective Time of Merger ($) | Aggregate Number of Restricted Stock Units Assumed at Effective Time of Merger(3) |
|---|---|---|---|---|
| **Directors:** | | | | |
| Ralph B. Andy | 21,256 | 16,944 | $151,310 | 4,312 |
| Lloyd E. Campbell | 37,784 | 33,472 | $298,905 | 4,312 |
| Edward J. Dineen | 33,472 | 33,472 | $298,905 | — |
| Walter J. Klein | 37,784 | 33,472 | $298,905 | 4,312 |
| Pamela F. Lenehan | 36,339 | 33,472 | $298,905 | 2,867 |
| Jackson W. Robinson | 39,347 | 33,472 | $298,905 | 5,875 |
| Craig A. Wolfanger | 37,784 | 33,472 | $298,905 | 4,312 |
| **Named Executive Officers:** | | | | |
| Victoria Holt | 12,410 | 10,846 | $ 96,855 | $1,564 |

59.    In addition, on December 12, 2012, each non-employee member of Spartech's board of directors received a fully vested grant of 5,580 restricted stock units, having a grant date fair value of $50,000, in connection with the director's service for the prior fiscal year, in accordance with Spartech's standard director compensation policy.

Each of these restricted stock units will be converted into the right to receive the merger consideration.

60.     Thus, while the Proposed Transaction is not in the best interest of Spartech shareholders, it will produce lucrative benefits for the Company's officers and directors.

### *The Materially False and Misleading S-4*

61.     On December 17, 2012, PolyOne filed the S-4 with the SEC in connection with the Proposed Transaction. The S-4 fails to provide the Company's shareholders with material information and/or provides them with materially misleading information thereby rendering the shareholders unable to make an informed decision on how to vote their shares at the special shareholder meeting including, inter alia, information concerning:  (1) Spartech's financial forecasts Barclays used in its analyses supporting its Fairness Opinion the Board relied upon in approving and recommending the Proposed Transaction; (2) key inputs and assumptions underlying Barclay's financial analyses; (3) the negotiations with PolyOne; and (4) Barclay's potential conflicts of interests.

#### 1.  Spartech's Financial Projections

62.     The S-4 fails to disclose various material financial projected metrics, such as free cash flow, capital expenditures, depreciation & amortization, and changes in working capital, in Spartech management's financial projections critical to Spartech shareholders' ability to make an informed decision on the Company's standalone value. Such metrics are of particular importance as these projections were utilized by Barclays in its financial analyses that the Board relied upon in approving and recommending the Proposed Transaction.

63.    Specifically, the S-4 states that Barclay's Discounted Cash Flow Analysis was based on management's projections, including estimates of base case, upside case and downside case performance.  The S-4 provides only one set of projections and does not state which set of projections those are.  The S-4 should disclose each set of projections Barclays relied on in its analyses, clearly labeled as such.  Further, the one set of projects provided in the S-4 does not provide key projections relied upon by Barclays, including unlevered free cash flows. capital expenditures, depreciation & amortization, and changes in working capital.

64.    The S-4 also fails to provide an analysis of the specific synergies expected to be produced from the combination of the Company and PolyOne.

65.    The S-4 fails to disclose any information about the Company's performance during the fourth quarter of its 2012 fiscal year.

### 2.  Material Omissions in Barclay's Analysis

66.    With respect to the financial analyses supporting Barclay's Fairness Opinion, the S-4 fails to disclose various material elements of the financial analysis, including:

(a)    With respect to the *Selected Comparable Company Analysis*: the criteria used to select the companies determined to be comparable, and; the various financial multiples and ratios of Spartech, PolyOne, and the selected comparable companies calculated and utilized in the analysis;

(b)    With respect to the *Selected Precedent Transaction Analysis*: the multiples observed for each precedent transaction; the reason for which ColorMatrix was

deemed to not be a comparable company for Spartech, and; the method by which Barclays calculated the range of implied price per share of Spartech common stock

(c)     With respect to the *Transaction Premium Analysis*: the premiums indicated for each transaction utilized in the analysis, and; the method by which Barclays calculated the range of implied price per share of Spartech common stock;

(d)     With respect to the *Discounted Cash Flow Analysis*: managements projections including estimates of base case, upside case and downside case performance utilized in the analysis, as well as which, if any, of these three cases is represented by the Spartech Projections contained in the S-4; the assumptions and inputs used to calculate the discount rate range of 12.75%-13.75% and; the assumptions and inputs used to calculate the perpetuity growth rate range of 2.75% - 3.25%.

### 3.   <u>Material Omissions Concerning the Process</u>

67.     The S-4 fails to disclose various material elements of the sales process. These elements include:

(a)     Whether the Board considered the creation of special committee to oversee and evaluate the sales process at any point after entering into negations with PolyOne;

(b)     Whether the Board considered any other financial advisors other than Barclays;

(c)     Information regarding the strategic plan Andy indicated the Company was focused on executing on March 1, 2012, as well as the reasons for which the Board ultimately decided to favor a transaction with PolyOne over its execution;

(d)     The other potential acquirers considered by the Board during the meetings on March 13, and 14, 2012, as well as the reasons for which the Board believed that none of these other potential strategic acquirers "offered the same unique long-term opportunities as those presented by a possible strategic transaction with PolyOne;

(e)     The unique long-term opportunities the Board believed PolyOne presented;

(f)     Who the Board believed would be a part of the "strong, experienced management team with a demonstrated track record of integrating acquisitions" if PolyOne and the Company merged;

(g)     The significant synergies the Board believed a transaction between PolyOne and Spartech could provide;

(h)     The potential defense considerations considered by certain members of the board on April 26, 2012;

(i)     The potential acquirers and merger partners identified by Barclays on April 26, 2012, whether the Board solicited any of these parties, and if not, the reasons for which it chose not to do so;

(j)     The strategic alternatives for Spartech's color and specialty compounds business discussed on June 19, and 20, 2012;

(k)     The risks and macroeconomic assumptions that were used in preparing the financial assumptions underlying the strategic stand-alone plan discussed on August 23, 2012, as well as the content of the overview of the Company overcoming these risks discussed on October 5, 2012, the reasons for management's expression of

support for the stand-alone plan's continuation on October 1, 2012, and which members of management expressed these views;

(l)     The alternatives to the PolyOne transaction discussed on October 12, 2012;

68.     In addition, the S-4 fails to disclose whether Barclays performed any financial services for PolyOne during the past two years, and if so, the nature of such services, and compensation Barclays received.

69.     Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company shareholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 Promulgated Thereunder
(Brought Individually)**

70.     Plaintiff brings this claim individually on behalf of himself.

71.     Plaintiff repeats the previous allegations set forth herein, except for paragraphs 30-37, as if set forth in full herein.

72.     Defendants have issued the S-4 with the intention of soliciting shareholder support of the Proposed Transaction. Each of the Individual Defendants reviewed and/or assisted in the preparation of the materially misleading S-4 and allowed its contents to be issued to Spartech's public shareholders with the intent of soliciting their vote on the Proposed Transaction.

73.     Rule 14a-9, promulgated by SEC pursuant to Section 14(a) of the Exchange Act provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9.

74.     Specifically, the S-4 violates the Section 14(a) and Rule 14a-9 because it contains materially misleading statements and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants should have known that the S-4 is materially misleading and omits material facts that are necessary to render them non-misleading.

75.     The misrepresentations and omissions in the S-4 are material to Plaintiff, as well as the Company's other public shareholders, and Plaintiff and other shareholders will be deprived of their entitlement to cast a fully informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

## COUNT II

### Breach of Fiduciary Duties
### (Class Claim Against All Individual Defendants)

76.     Plaintiff repeats all previous allegations as if set forth in full herein.

77.     The Individual Defendants have knowingly and recklessly and in bad faith violated fiduciary duties of care and loyalty owed to the public shareholders of Spartech

and have acted to put their personal interests ahead of the interests of Spartech shareholders.

78.    The Individual Defendants' recommendation of the Proposed Transaction will result in change of control of the Company which imposes heightened fiduciary responsibilities to obtain a fair price for Spartech's shareholders and requires enhanced scrutiny by the Court.

79.    The Individual Defendants have breached their fiduciary duties of loyalty and due care owed to the shareholders of Spartech because, among other reasons:

(a)    they failed to take steps to obtain a fair price for Spartech and affirmatively took steps to avoid competitive bidding;

(b)    they failed to properly value Spartech; and

(c)    they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Proposed Transaction.

80.    As a result of the Individual Defendants' breaches of their fiduciary duties, Plaintiff and the Class will suffer irreparable injury in that they have not and will not receive their fair portion of the value of Spartech's assets and will be prevented from benefiting from a fair transaction.

81.    Unless enjoined by this Court, the Individual Defendants will continue to breach their fiduciary duties owed to Plaintiff and the Class, and may consummate the Proposed Transaction, to the irreparable harm of the Class.

82.    Plaintiff and the Class have no adequate remedy at law.

## COUNT III

### Aiding and Abetting
### (Against PolyOne, Merger Sub and Merger LLC)
### (Class Claim)

83.    Plaintiff repeats all previous allegations as if set forth in full herein.

84.    As alleged in more detail above, Defendants PolyOne, Merger Sub, and Merger LLC have aided and abetted the Individual Defendants' breaches of fiduciary duties.

85.    As a result, Plaintiff and the Class members are being harmed.

86.    Plaintiff and the Class have no adequate remedy at law.

## COUNT IV

### Breach of Fiduciary Duty -- Disclosure
### (Against Individual Defendants)

87.    Plaintiff repeats all previous allegations as if set forth in full herein.

88.    The fiduciary duties of the Individual Defendants in the circumstances of the Proposed Transaction require them to disclose to Plaintiff and the Class all information material to the decisions confronting Spartech's shareholders.

89.    As set forth above, the Individual Defendants have breached their fiduciary duty through materially inadequate disclosures and material disclosure omissions.

90.    As a result, Plaintiff and the Class members are being harmed irreparably.

91.    Plaintiff and the Class have no adequate remedy at law.

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)    declaring Plaintiff's breach of fiduciary duty and aiding and abetting claims as class claims and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B)    declaring that the S-4 is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange and Rule 14a-9 promulgated thereunder;

(C)    enjoining, preliminarily and permanently, the Proposed Transaction;

(D)    in the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

(E)    directing that Defendants account to Plaintiff and the other members of the Class for all damages caused by them and account for all profits and any special benefits obtained as a result of their breaches of their fiduciary duties;

(F)    awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

(G)    granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

Dated: January 21, 2013                    Respectfully submitted,

                                           CAREY DANIS & LOWE

                               By:         /s/ James J. Rosemergy
                                           8235 Forsyth Boulevard, Suite 1100
                                           St. Louis, MO  63105
                                           Tel.:  (314) 725-7700
                                           Fax.: (314) 721-0905
                                           jrosemergy@careydanis.com

                                           LEVI & KORSINSKY, LLP
                                           Shannon L. Hopkins, Esq.
                                           30 Broad Street, 24th Floor
                                           New York, New York 10004
                                           Tel: (212) 363-7500
                                           Fax: (212) 363-7171
                                           shopkins@zlk.com

                                           *Attorneys for Plaintiff*